UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH M. CLAXTON,

            Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION,

            Defendant.
                                         /

No. 07-50268

District Judge Robert H. Cleland

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

On March 27, 2007, Petitioner Joseph M. Claxton filed three motions to quash administrative subpoenas issued by the Respondent Social Security Administration, Office of the Inspector General (SSA-OIG). *See* Docket #1, #2, and #3. On May 17, 2007, Petitioner, who is proceeding *pro se*, filed a self-styled "motion for order" pursuant to the Right to Financial Privacy Act (RFPA), 12 U.S.C. §3410 [Docket #6], which essentially duplicates the claims in his March 27th motions.

On October 11, 2007, the Respondent filed a response to the Petitioner's motions to quash and motion for order [Docket #7], as well as a motion for summary enforcement of the subpoenas [Docket #8].

These matters have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Petitioner's three motions to quash subpoenas [Docket #1, #2 and #3] and his motion for order [Docket #6] be

DENIED, and that Respondent's motion for summary enforcement [Docket #8] be GRANTED.

## I.  FACTS

The subpoenas at issue are directed at account information from LaSalle Bank [Docket #1], Charter One Bank [Docket #2], and Franklin Bank [Docket #3]. Three subpoenas–one to each bank–were issued on March 12, 2007, and are directed at business accounts of Giving Older Adults Love Adult Daycare, Inc. (GOAL), a Michigan corporation. On April 23, 2007, a fourth subpoena was issued to Charter One Bank, seeking Petitioner's personal financial records.

In a sworn declaration filed with the Court on October 11, 2007 [Docket #9], Bradley J. Martin, an Agent with the SSA-OIG, states that under 5 U.S.C. App. § 3, the OIG "is authorized to investigate allegations of criminal and civil wrongdoing that impacts Social Security Administration programs," and that pursuant to that authority, he is conducting an investigation of the Petitioner and GOAL. Specifically, Agent Martin states that around August of 2004, he received credible information that while receiving Social Security Disability Insurance Benefits (DIB), the Petitioner was operating and receiving income from GOAL, in violation of SSI regulations. GOAL is a Michigan Corporation, with Petitioner designated in various filings as its Resident Agent and its Executive Director. Agent Martin's investigation revealed the existence of Petitioner's and GOAL's bank accounts that are the subject of these subpoenas.

In ¶16 of his affidavit, Agent Martin describes the purpose of the subpoenas as

follows:

> "16. The purpose of the four subpoenas identified in paragraphs 14 and 15 above includes gaining access to information showing the potential flow of funds from GOAL accounts to Claxton's personal accounts in order to determine whether Claxton was drawing a salary or some other financial gain from GOAL. Access to all bank drafts from GOAL's accounts will also help show to what extent Claxton may have been involved in the corporate operations of GOAL. Further, the bank drafts will likely identify potential witnesses who could help clarify whether Claxton was indeed illegally working while collecting Social Security disability benefits."

Agent Martin states that with regard to both the subpoena for Petitioner's personal account information and the subpoena for GOAL's account information, he complied with the notice requirements of the RFPA, although he "was later advised by agency counsel that the Right to Financial Privacy provisions regarding customer notice do not apply to corporate bank accounts." *Declaration of Bradley J. Martin*, ¶17.

Petitioner bases his motions to quash and motion for order on a claim of non-substantial compliance with the FRPA. He also states that the "subject matter" is being adjudicated by a Social Security Administrative Law Judge (ALJ), and requests "that we secure the ruling of [the ALJ] before determining if any additional information is legally required." *Sworn Statement of Movant*, Docket #6.

## II. LEGAL PRINCIPLES

Under the Inspector General Act of 1978, 5 U.S.C. App. 3, §§ 4, 8, the SSA-OIG is charged with investigating and detecting fraud and abuse in the SSA's programs and operations, and assisting in the identification and prosecution of those who defraud the SSA. Under 5 U.S.C. App. 3, § 6(a)(4), the SSA-OIG has broad power to issue administrative

subpoenas for the "production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of [its] functions."

Administrative subpoenas for personal bank records are subject to the FRPA, and under 12 U.S.C. § 3410, a "customer" of a financial institution may object to an administrative subpoena of his or her bank records. Under 12 U.S.C. § 3401(5), "customer" is defined as "any person or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name." The term "person" is defined in § 3410(4) as "an individual or a partnership of five or fewer individuals." A corporation is therefore neither a customer nor a person under the statutory definition of those terms, and would not have standing to challenge a subpoena under the FRPA. *See Pittsburgh National Bank v. United States*, 771 F.2d 73, 75-76 (3rd Cir. 1985); *United States v. Daccarett*, 6 F.3d 37, 51 (2nd Cir. 1993).

The standard by which the validity of an administrative subpoena is scrutinized is "reasonable belief as to relevance." 12 U.S.C. §3410(c). The FRPA, which provides the sole judicial remedy available to a customer to oppose disclosure of financial records[1], was enacted in response to the decision in *United States v. Miller*, 425 U.S. 435, 442-43, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), where the Supreme Court held that a bank customer has no

---

[1] 12 U.S.C. § 3410(e).

legitimate expectation of privacy in information contained in bank records, and that such records are consequently beyond the protection of the Fourth Amendment. *See United States v. A Residence Located at 218 Third Street, New Glarus, Wisconsin*, 805 F.2d 256, 260 (7th Cir. 1986). Thus, "reasonable belief as to relevance" is a lower standard than "probable cause." *Hunt,* 520 F.Supp. at 603.

In *Collins v. CFT Commission,* 737 F.Supp. 1467, 1480 (N.D. Ill. 1990), the district court, quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401 (1950), stated, "An agency 'can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not.'" However, this reading of § 3410(c) is too expansive. To equate otherwise unsupported suspicion with "reasonable belief as to relevance" would be to effectively overrule § 3410(c). *Breakey v. Inspector General*, 836 U.S. 422, 426 (E.D. Mich. 1993). In *Breakey,* Judge Cleland rejected this broad interpretation of the FRPA in finding that "official curiosity" was an insufficient basis to issue an administrative subpoena, and also noted that *Morton Salt*, decided nearly three decades before the enactment of the FRPA, dealt with the Fourth Amendment standing of corporate entities, and was not applicable to claims of individuals under the FRPA.

Nevertheless, it is generally acknowledged that "[f]or purposes of an administrative subpoena, the notion of relevancy is a broad one," and that it requires that the information sought "touches a matter under investigation." *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982); *Whitburn v. U.S. Dept. of Treasury*, 1993 WL 544285 (D. Kansas 1993)("[W]hile the ability of the government to obtain such information may not rest upon governmental whim,

it remains clear that the standard of relevance utilized by courts has been quite broad."). Thus, while the government has to show *something* beyond mere curiosity in order to justify a subpoena, it does not have to show a lot.

In a challenge to an administrative subpoena issued under 12 U.S.C. § 3405, the movant has the initial burden of presenting a prima facie showing that government access to his records would be improper. *Breakey*, 836 F.Supp. at 425; *Hancock v. Marshall*, 86 F.R.D. 209, 211 (D.D.C. 1980). If the movant meets this burden through his sworn affidavit submitted under 12 U.S.C. § 3410(a), the government then has the burden of showing that the records sought are relevant to a legitimate law enforcement inquiry. *Breakey*, 836 F.Supp. at 425; *Hunt v. S.E.C.*, 520 F.Supp. 580, 603 (N.D. Tex. 1981).

### III. ANALYSIS

#### A. Standing

The three accounts belonging to GOAL are corporate accounts, and thus not subject to the FRPA. *Pittsburgh National Bank, supra*. Therefore, Petitioner does not have standing to challenge the three March 12, 2007 subpoenas.

#### B. VALIDITY OF THE SUBPOENAS

As to the subpoena for Petitioner's personal bank account, and even assuming that he has standing to challenge the subpoenas for GOAL's corporate accounts, all of the subpoenas were sufficiently relevant to a valid investigatory purpose to withstand judicial scrutiny.

In *Rupert v. Department of Defense*, 1994 WL 495859 (E.D. La. 1994), the court validated a subpoena of personal bank accounts where it was determined "that

transfers of large sums of money were made between the accounts of these companies and the Ruperts' personal accounts during the time that the companies had government contracts."

Likewise in *Collins, supra*, which involved an investigation of possible illegal commodities trading by Collins and Lake States Commodities, Inc., a subpoena for the two personal bank accounts was justified "in view of the fact that funds deposited to and withdrawn from these [personal] accounts were commingled in the Collins trading account at Geldermann with funds deposited to and withdrawn from the Lake States accounts." *Id.*, 737 F.Supp. at 1480.

In *In re S.E.C. Private Investigation*, 1990 WL 119321 (S.D. N.Y. 1990), the government issued subpoenas for a number of bank records during the course of an investigation into illegal securities trading. These records included both brokerage accounts in England and personal accounts in the United States, although there was no showing of transfers of funds from one bank to the other. The court found that the movant's connection to the activity under investigation was sufficient to show a reasonable belief as to the relevance of the bank records, both corporate and personal:

> "The SEC has shown that the plaintiff had control over brokerage accounts in which suspect trading occurred. That is enough to establish reasonable belief when one considers that the statute deals with *investigative* subpoenas. Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct. What need be shown is not probable cause, but a good reason to investigate. A mere belief is not enough, but a reasonable belief is. By showing that plaintiff has a connection to activity it is charged to investigate, the SEC has shown reason for a belief that the bank records it seeks here

contain relevant information."

*See also, Mackey v. S.E.C.*, 1997 WL 114801 (D. Conn. 1997).

In the present case, the Respondent has information that the Petitioner is receiving Social Security Disability benefits. Petitioner is not entitled to such benefits if he is employed and earning wages above a certain level. Agent Martin states that he has received a "credible allegation" that Petitioner is operating an adult day care center. In corroboration of this anonymous, or at least unnamed information, Martin is aware that GOAL is a non-profit corporation registered in the State of Michigan by Petitioner, with Petitioner listed as the Resident Agent. Documents already obtained from LaSalle Bank identify Petitioner as the Executive Director of GOAL, as do contracts between GOAL and government funding agencies, signed by Petitioner as "Executive Director."

Under the totality of facts presented, there is a sufficient basis under § 3410(c) to justify the issuance of a subpoena for Petitioner's personal account as well as the GOAL corporate accounts. It appears that Petitioner is earning income while receiving Social Security Disability benefits. The SSA-OIG therefore has a reasonable belief that Petitioner's and GOAL's bank records are relevant to a legitimate law enforcement investigation.

## IV. CONCLUSION

For these reasons, I recommend that Petitioner's three motions to quash subpoenas [Docket #1, #2 and #3] and his motion for order [Docket #6] be DENIED, and that Respondent's motion for summary enforcement [Docket #8] be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days

of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and
complexity. The response must specifically address each issue raised in the objections, in the same order and labeled ad "Response to Objection #1," "Response to Objection #2," etc.

                                                        S/R. Steven Whalen
                                                        R. STEVEN WHALEN
                                                        UNITED STATES MAGISTRATE JUDGE

Dated: December 17, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 17, 2007.

                                                              S/G. Wilson
                                                              Judicial Assistant